1

2

3

4

5

6    ACADIA LAW PLLC
     Valerie Ann Lee, WSBA No. 23548
7    P.O. Box 15935
     Seattle, WA 98115
8    (207) 409-6060

9

10                    IN THE UNITED STATES DISTRICT COURT FOR

11                    THE EASTERN DISTRICT OF WASHINGTON

12

13   KALISPEL TRIBE OF INDIANS, a          Case No.
     federally recognized Tribe; KALISPEL
14   TRIBAL ECONOMIC AUTHORITY,            **COMPLAINT FOR DAMAGES and**
     a tribal corporation; and NORTHERN    **DEMAND FOR JURY TRIAL**
15   QUEST RESORT AND CASINO, a
     tribal corporation;
16
17                            Plaintiffs,

18   v.

19
     THE 3M COMPANY, TYCO FIRE
20   PRODUCTS L.P., successor in interest
     to THE ANSUL COMPANY;
21   BUCKEYE FIRE EQUIPMENT
     COMPANY; CHEMGUARD INC.;
22   KIDDE FIREFIGHTING, INC.;
     NATIONAL FOAM, INC.; and the
23   UNITED STATES OF AMERICA.
24
25                            Defendants.

26

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **1** of **37**

**ACADIA LAW** PLLC
P.O. Box 15935
**SEATTLE, WASHINGTON 98115**
Telephone: (207) 409-6060

# CONTENTS

I.    INTRODUCTION ........................................................................................ 3

II.   PARTIES ................................................................................................... 5

III.  JURISDICTION ......................................................................................... 7

IV.   VENUE ...................................................................................................... 7

V.    JURY DEMAND ........................................................................................ 8

VI.   FACTS ....................................................................................................... 8

VII.  CLAIMS ................................................................................................... 24

    FIRST CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS
    NEGLIGENCE ............................................................................................ 24

    SECOND CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS FOR
    FAILURE TO WARN ................................................................................... 26

    THIRD CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS FOR
    MANUFACTING DEFECT/DEFECTIVE DESIGN ............................................ 29

    FOURTH CAUSE OF ACTION AGAINST THE MANUFACTURING DEFENDANTS FOR
    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ....................... 31

    ASSERTION OF PUNITIVE DAMAGES AGAINST THE MANUFACTURING
    DEFENDANTS ........................................................................................... 33

    FIFTH CAUSE OF ACTION AGAINST THE UNITED STATES FOR TRESPASS ........... 34

    SIXTH CAUSE OF ACTION AGAINST THE UNITED STATES FOR NEGLIGENCE .... 34

    SEVENTH CAUSE OF ACTION AGAINST THE UNITED STATES FOR NUISANCE ... 35

VIII. PRAYER FOR RELIEF ............................................................................. 37

**ACADIA LAW** PLLC
P.O. Box 15935
**SEATTLE, WASHINGTON 98115**
Telephone: (207) 409-6060

# I.    INTRODUCTION

1.    This action arises from the design, manufacture, and sale of Aqueous Film Forming Foam ("AFFF") and use and disposal of the same by the United States Air Force ("USAF") at and around the Fairchild Air Force Base ("Fairchild") in eastern Washington.

2.    The action seeks damages resulting from the contamination of Plaintiffs' water, purchased from and supplied by the City of Airway Heights ("City").  The contamination of and injury to the Plaintiffs' property was caused by toxic pollutants in AFFF used, disposed of, and released at and around Fairchild. AFFF was designed, manufactured, marketed, and sold to the UNITED STATES for use in fire training and response at and near Fairchild and other federal facilities.

3.    The AFFF contained per and polyfluorinated alkyl substances ("PFAS"), which include perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA").  References to PFAS herein shall be construed to include PFOA and PFOS unless otherwise stated.

4.    PFAS are bio-accumulative in humans and other organisms. Scientific studies have associated exposures to PFAS with carcinogenicity, toxicity, and developmental defects in humans.  Scientific studies also demonstrate that exposure from drinking contaminated water is harmful to health.

5.    PFAS are extremely long-lived in the environment.  Data show that they do not break down in in the environment even after decades.

6.    PFAS are very mobile in different environmental media. They can be carried long distances by air and can migrate long distances through groundwater.

7.    In 2016 the United States Environmental Protection Agency ("EPA") established a health advisory limiting concentrations of PFAS in drinking water.

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **3** of **37**

1    EPA advised that PFOA and PFOS in drinking water, either individually or

2    combined, should not be greater than 70 parts per trillion (0.07 parts per billion).

3    EPA scientists have since proposed making the advisory more protective by

4    lowering these numbers and adding other compounds within the PFAS family.

5        8.    Some states currently have lower values for the protection of health

6    than the current EPA advisory and also have regulated PFAS in addition to PFOA

7    and PFOS.  As of the date of filing, the State of Vermont, for example, has issued a

8    health advisory that limits PFAS to a combined total of 20 parts per trillion of

9    PFOA, PFOS, perfluorohexane sulfonic acid ("PFHxS"), perfluoroheptanoic acid

10    ("PFHpA"), and perfluorononanoic acid ("PFNA").

11        9.    AFFF and its PFAS are pollutants within the meaning of the Federal

12    Clean Water Act and the Washington State Clean Water Act.

13        10.    AFFF use and disposal at Fairchild resulted in PFAS in nearby

14    groundwater, contamination of the City's wellfield, and, in turn, contamination of

15    Plaintiffs' water in excess of the federal advisory for PFAS and standards adopted

16    by states for the protection of health and the environment.

17        11.    The contamination of the City's water supply resulted in injury to

18    Plaintiffs' water, making it unsuitable for use.  The water is used to support their

19    business and governmental activities on approximately 250 acres of Reservation

20    and Trust lands near Airway Heights, Washington.  This injury to Plaintiffs'

21    property and the loss of their use of their property, caused millions of dollars of

22    damages to Plaintiffs.

23        12.    PFAS-containing AFFF caused Plaintiffs' property injury and

24    resulting damages.

25

26

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **4** of **37**

1

## II.    PARTIES

2      13.      Plaintiff, KALISPEL TRIBE OF INDIANS ("TRIBE"), is a federally

3   recognized tribe with Reservation and Trust lands in eastern Washington including

4   250 acres near Airway Heights, Washington.

5      14.      Plaintiff, KALISPEL TRIBAL ECONOMIC AUTHORITY

6   ("KTEA"), is a tribal corporation managing economic enterprises.  It has a main

7   office located at 100 North Hayford Road, Airway Heights, WA.

8      15.      Plaintiff, NORTHERN QUEST RESORT AND CASINO

9   ("NORTHERN QUEST"), is a tribal corporation. It has a main office located at

10   100 North Hayford Road, Airway Heights, WA.

11      16.      Defendant, THE 3M COMPANY ("3M"), f/k/a the Minnesota

12   Mining and Manufacturing, Co., is a Delaware corporation and does business

13   throughout the United States, including in Washington.  It is based in Maplewood,

14   Minnesota.  3M designed, manufactured, marketed, and sold PFAS-containing

15   AFFF used for fire training and response at military bases and other locations

16   throughout the country, including Fairchild.

17      17.      Defendant TYCO FIRE PRODUCTS, L.P. ("TYCO") is a Delaware

18   limited partnership with principal offices at 1400 Pennbrook Parkway, Lansdale,

19   PA. Upon information and belief, TYCO is the successor-in-interest to ANSUL,

20   INC. ("Ansul").  TYCO manufactures the Ansul brand of products.  TYCO does

21   business throughout the United States, including in Washington.  TYCO, and/or its

22   predecessor in interest Ansul, designed, manufactured, marketed, and sold AFFF

23   to the United States military including, on information and belief, to Fairchild.

24      18.      Defendant CHEMGUARD INC. ("CHEMGUARD") is a Wisconsin

25   corporation with its principal place of business in Marionette, Wisconsin.

26   CHEMGUARD does business throughout the United States, including, on

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **5** of **37**

1  information and belief, in Washington.  At all times relevant CHEMGUARD
2  designed, manufactured, marketed, and sold AFFF to military facilities and bases
3  throughout the United States, including, on information and belief, to Fairchild.

4      19.    Defendant BUCKEYE FIRE EQUIPMENT COMPANY
5  ("BUCKEYE") is an Ohio Corporation with principal offices at 110 Kings Road,
6  Kings Mountain, North Carolina. BUCKEYE does business throughout the United
7  States, including, on information and belief, in Washington.  At all times relevant
8  BUCKEYE designed, manufactured, marketed, and sold AFFF to military facilities
9  and bases throughout the United States including, on information and belief, to
10  Fairchild.

11      20.    Defendant NATIONAL FOAM, INC. ("NATIONAL FOAM") is a
12  Pennsylvania corporation, having a principal place of business at 350 E. Union St.,
13  West Chester, PA. NATIONAL FOAM does business throughout the United
14  States, including, on information and belief, in Washington.  At all times relevant
15  NATIONAL FOAM manufactured, marketed, and sold AFFF to military facilities
16  and bases throughout the United States, including, on information and belief, to
17  Fairchild.

18      21.    Defendant KIDDE FIREFIGHTING, INC. ("KIDDE
19  FIREFIGHTING"), f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL
20  FOAM INC., is a North Carolina corporation having a principal place of business
21  at 160 Mine Lake Ct., Suite 200, Raleigh, NC.  At all times relevant KIDDE
22  FIREFIGHTING designed, manufactured, marketed and sold AFFF used in
23  training operations and for firefighting at federal facilities and military bases
24  throughout the country, including at Fairchild.  KIDDE FIREFIGHTING is sued
25  individually, and as successor in interest to NATIONAL FOAM.

26

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

22.    Defendant UNITED STATES OF AMERICA ("UNITED STATES") and through its departments and agencies, including the Department of the Air Force, used, stored, and disposed of AFFF at Fairchild.  Department of the Air Force is one of three military departments of the United States Department of Defense and is responsible for the administration and operation of the USAF.  The USAF is and was at all times relevant to this complaint the owner and operator of Fairchild.

23.    The Defendants 3M, TYCO, CHEMGUARD, BUCKEYE, NATIONAL FOAM, and KIDDE FIREFIGHTING shall hereinafter be referred to collectively as the "MANUFACTURING DEFENDANTS."

## III.    JURISDICTION

24.    This court has jurisdiction for the claims against the UNITED STATES under the Federal Tort Claims Act pursuant to 28 U.S.C. §1346(b).

25.    Plaintiff, TRIBE, filed an administrative tort claim with the USAF. In a letter dated October 7, 2019 the USAF denied its claim.  This action is being filed within six months of the date of the denial.

26.    Jurisdiction is proper as to the MANUFACTURING DEFENDANTS pursuant to 28 U.S.C. §§ 1332(a) and 1367(a).

## IV.    VENUE

27.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1402(b) because the Plaintiff, TRIBE, resides here and the acts and omissions giving rise to this action occurred here.

28.    Venue is also proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **7** of **37**

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

claims occurred here, and a substantial part of the property that is subject of this action is situated in this judicial district.

## V.    JURY DEMAND

29.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

## VI.    FACTS

30.    AFFF is a Class B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

31.    AFFF was introduced commercially in the mid–1960s and rapidly became the primary firefighting foam in the United States and many parts of the world.

32.    AFFF is synthetically formed by combining fluorine-free hydrocarbon foaming agents with surfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of the hydrocarbon fuel to smother fires.

33.    On information and belief, each of the MANUFACTURING DEFENDANTS designed, manufactured, and sold AFFF that was used at Fairchild.

34.    Defendant 3M was a primary designer and the primary manufacturer of PFAS chemicals in the United States from the 1940s until 2002.  3M marketed and sold PFAS to be used in AFFF throughout the United States.  3M also manufactured and sold AFFF that contained PFAS.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

35.    Defendants TYCO, CHEMGUARD, BUCKEYE, NATIONAL FOAM, KIDDE FIREFIGHTING each manufactured AFFF using PFAS that they produced themselves or purchased from other companies. These Defendants' AFFF was then sold to the UNITED STATES for use at government facilities across the nation, including at Fairchild.

36.    Since the 1960s, 3M has known that PFAS are stable, are persistent in the environment, do not degrade, and are toxic.

37.    Early studies showed that PFAS accumulate in the body and are "toxic."  3M studies from the 1970s concluded that PFAS are "even more toxic" than previously believed.

38.    Upon information and belief, by the 1970s, 3M knew its PFAS were widely persistent in the blood of the general United States population. Upon information and belief, 3M concealed this knowledge from the public and government regulators.

39.     Humans and other organisms are readily exposed to PFAS from consumption of PFAS-contaminated drinking water, inhalation, and consumption of contaminated food.  PFAS are readily absorbed and accumulate in the bloodstream, kidneys, and liver.

40.    PFAS contamination is a serious threat to health and the environment.

41.    Exposure to certain PFAS is associated with harmful and serious health effects in humans and animals, including but not limited to:

     a.    altered growth;

     b.    impacts to learning and behavior of infants and children;

     c.    lowering a woman's chance of getting pregnant;

     d.    increased likelihood of miscarriages;

     e.    increased cholesterol level;

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

f.       modulation of the immune system; and

g.       increased risk of testicular and kidney cancers.

42.    Succeeding paragraphs will reference locations at Fairchild. Exhibit A ("Ex. A") contains a general map of Fairchild and the proximity of the City of Airway Heights. *See* Ex. A, p. 1. This map is followed by four maps showing locations referenced below including: FF-1, WW-1, the Industrial Waste Lagoons/Ponds and their outlets, and No Name Creek/Ditch. *See*: Ex. A, pp 2-5.

43.    Since 1970, the USAF has used PFAS-containing AFFF in Ex. Ap fire-training exercises at Fairchild. The USAF tested its AFFF-dispensing equipment on fire trucks by spraying AFFF on the ground. On information and belief, the USAF disposed of PFAS-laden AFFF by washing it into its storm water system, which ultimately discharged to No Name Creek from industrial waste water ponds located in an area known as WW-1. See Ex. A.

44.    Since 1970, the USAF has stored PFAS-containing AFFF at Fairchild. On information and belief, multiple storage failures resulted in AFFF spills on the ground since 1970.

45.    Since 1970 the USAF has responded to fires at Fairchild and extinguished them by using AFFF, which resulted in discharge of PFAS to the ground and groundwater.

46.    Studies have shown that the storage, spills, and use of PFAS-containing AFFF have contaminated the groundwater in and around Airway Heights and contaminated the public water wells of the City that supplied the water purchased from the City by TRIBE and its tribal corporations in excess of the federal health advisory and also in excess of standards set by states for the protection of health and the environment.

**ACADIA LAW** PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

47.     The MANUFACTURING DEFENDANTS manufactured and distributed the AFFF to Fairchild, knowing that AFFF containing PFAS, including PFOA and PFOS, presented an unreasonable risk to human health and the environment and was inherently dangerous.

48.     The MANUFACTURING DEFENDANTS also, at all relevant times, knew that PFAS, including PFOA and PFOS, were highly soluble and mobile in water, were highly likely to contaminate water supplies and other receptors, were persistent in the environment, could (and can) bioaccumulate in humans, and could (and can) cause serious health effects.

49.     The MANUFACTURING DEFENDANTS manufactured, marketed, and sold their products with knowledge that large quantities of PFAS-containing AFFF would be used in training exercises and in responding to emergency situations at military facilities and bases, including Fairchild, in such a manner that PFAS would contaminate the air, soil, and groundwater.

50.     The MANUFACTURING DEFENDANTS manufactured, marketed, and sold their products with knowledge that large quantities of PFAS-containing AFFF would be stored in fire-prevention systems and tanks on USAF bases, including Fairchild, and that such systems and storage were used and maintained in such a manner that dangerous PFAS, including PFOA and PFOS, would be released into the air, soil, and groundwater.

51.     The MANUFACTURING DEFENDANTS failed in their duty to warn users of the inherently dangerous properties of their PFAS-containing AFFF.

52.     Although the MANUFACTURING DEFENDANTS did not disclose to the UNITED STATES the full information available to them and the complete information they had developed and/or knew regarding the risks associated with AFFF and the PFAS, the UNITED STATES was aware of the risk to health and

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

the environment from PFAS in AFFF.  Since the 1970s, the UNITED STATES has conducted studies that provided it with knowledge that PFAS, including PFOA and PFOS, in AFFF are toxic to organisms in the environment and pose various human health risks.

53.    It was well known to the MANUFACTURING DEFENDANTS that their products could be released to the environment

54.    It was well known to the UNITED STATES, including the USAF, that, once released into the environment from placement on the ground or leaking from tanks, PFAS could contaminate soils, surface waters, and readily infiltrate the soil to groundwater.  Further, it was well known that the geology at Fairchild would potentiate the transport of contamination including PFAS through the groundwater to the City's wellfield.

55.    The contaminants released by hazardous AFFF caused property injury to the Plaintiffs and also resulted in an increased risk of cancer and other morbidity to members of the TRIBE and others who used the contaminated water being supplied to facilities on its Reservation and Trust lands in Airway Heights.

*Facts Related to the UNITED STATES and Its Knowledge*

56.    Beginning in 1970, the U.S. military purchased and used AFFF meeting MIL-F-24385.  From 1970 until the mid-1990s, the USAF purchased AFFF from only 3M.  During this period, the USAF purchased and used 3M-manufactured AFFF at Fairchild.

57.    Since at least the early 1970s, studies have demonstrated hazards to human health and the environment caused by PFAS-containing AFFF.  The UNITED STATES was aware of these hazards as these studies were easily accessible and reviewed by technical military personnel. The UNITED STATES's

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

1  awareness was not as complete as that of the MANUFACTURING
2  DEFENDANTS because the MANUFACTURING DEFENDANTS failed to
3  provide complete information; nonetheless, the UNITED STATES was aware that
4  AFFF was harmful to the environment.

5      58.    As documented in a United States Naval Ocean Systems Center
6  ("NOSC") study, the military had available to it toxicity studies showing harmful
7  PFAS-impacts to a variety of organisms dating back to at least as early as 1973.
8  The NOSC was a unit of the UNITED STATES and a research arm of the U.S.
9  Navy.

10     59.    In addition to reviewing non-military studies, U.S. military
11  investigators conducted studies of their own.  For instance, in 1973 the USAF
12  conducted a study to assess the toxicity effects of PFAS-containing AFFF on fish
13  in controlled laboratory experiments. One of the AFFF formulations tested, Light
14  Water FC-200, was manufactured by 3M and was on the Qualified Products List
15  for AFFF meeting military specification MIL-F- 24385.[1] The first toxicity
16  experiment with 4- to 6-inch rainbow trout killed all the trout within 24 hours. A
17  repeat of the experiment killed half the trout within 48 hours and killed the
18  remaining trout within the following 24 hours.

19     60.    As reported by the Colorado Springs Gazette, the USAF conducted a
20  study in or about 1979 that linked PFAS to damaged "thymus, bone marrow,
21  stomach, mesentery, liver, and testes in the male rats."

22     61.    As reported by the Colorado Springs Gazette, the USAF conducted a
23  study published in or about 1981 finding that PFAS could cause damage to female
24  rats and their offspring, including low birth weight.  In addition, in or about 1979,

25
26
---
[1] Air Force 1973. Kroop, RH and Martin, JE. Treatability of Aqueous Film-Forming Foams Used for Fire Fighting. Technical Report No. AFWL-TR-73-279.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

the USAF conducted a study with pregnant female rats in which the rats died when exposed to high doses of PFAS.

62.     A 1985 literature survey by NOSC concluded that "usage of AFFF and the disposal of AFFF-laden waste water have the potential for an adverse impact on the environment -- these foams are potentially toxic due to the fluorocarbons and surfactants."  The survey references toxicity studies showing impacts on a variety of organisms in the 1970s and 1980s.  The review also analyzes a number of studies conducted by 3M in 1980 showing the lethality of AFFF at various concentrations over a 96-hour-time-frame test. The NOSC 1985 literature survey concludes that these "earlier studies demonstrated that a wide range of toxic concentrations exist for a variety of organisms."[2]

63.     In sum, the USAF has known for decades that PFAS in AFFF are harmful to the environment and possibly harmful to human health, albeit, in less complete fashion than the MANUFACTURING DEFENDANTS.  The MANUFACTURING DEFENDANTS, on information and belief, withheld information and/or failed to disclose complete information to the UNITED STATES regarding risks to the environment and human health.  Nonetheless, the UNITED STATES was aware that there were risks to health and the environment from the time it began using PFAS-containing AFFF at Fairchild.

---

[2] 1985 Technical Document 825, "Toxicity of Aqueous Film-forming Foams to Marine Organisms: Literature Review and Biological Assessment," S.M. Salazar, Naval Oceans Systems Center, San Diego, California.

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **14** of **37**

*UNITED STATES's Knowledge of Groundwater Contamination*

64.    In *Clark v. United States*, 660 F. Supp. 1164 (W.D. WA 1987), aff'd, 856 F.2d 1433 (9th Cir. 1988), the court entered a finding of fact that has an issue-preclusive effect for this Claim with respect to the UNITED STATES.

65.    In Clark, a case involving groundwater contamination caused by the USAF, the U.S. District Court, Western District of Washington found that dating back to the 1950s it was "common knowledge that groundwater could be polluted and that the pollution could travel great distances from the site of the original contamination. Further, it was generally known prior to that time that percolation, a process by which substances disposed of would leach into the underlying groundwater, could occur and that groundwater needed to be protected from deleterious leachates."[3]

66.    For all times relevant to this action the USAF/UNITED STATES knew that groundwater at Fairchild was shallow.   The groundwater across the Base is generally less than 10 feet and often at 6 feet below ground surface.  A recent USAF Site Inspection report documents that in February 2017 the groundwater ranged from 3.42 to 5.4 feet below the measuring point ("BMP").[4]

67.    On information and belief, construction activities at Fairchild from the early days of the Base provided a very clear picture of the shallow nature of the groundwater and the gravelly and sandy nature of the soils overlying the groundwater.

---

[3] *Clark v. United States*, 660 F. Supp. 1164 (W.D. Wash. 1987), aff'd, 856 F.2d 1433 (9th Cir. 1988) (finding of fact with respect to the United States and the USAF).

[4] *Final Site Inspection Report*, Fairchild Air Force Base, Washington, Contract FA8903-16-D-32007. Task Order 0004, Prepared for Air Force Civil Engineer Center, JBSA Lackland, Texas, Submitted by AMEC Foster Wheeler, January 2019, p. 8.  Groundwater elevations were calculated from the top of well casing elevations noted in the Fairchild database with the top of the casing being the "measuring point."

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

68.     In studies beginning in the early 1980s, USAF contractors commented on the shallow nature of the groundwater and the minimal protection afforded by an overlying layer of soil that was predominantly sand and gravel.  A 1985 USAF investigation explicitly states that the surface soils provided very minimal protection for the groundwater from surface activities.

69.     The UNITED STATES and the USAF therefore knew of the propensity for contaminants placed on the ground, in unlined ponds and pits, and in drainage areas at Fairchild to percolate into the West Plains Aquifer.

70.     The USAF also knew that water-soluble contaminants like PFAS would migrate through the aquifer with groundwater flow.

71.     In 1970 and thereafter, UNITED STATES and the USAF knew that AFFF discharges or runoff into surface waters and drainage areas would result in infiltration of water-soluble pollutants like PFAS into groundwater underlying Fairchild.

72.     The USAF knew of the close proximity of the City's drinking water wellfield to Fairchild.  It was a reasonably foreseeable consequence that the USAF would contaminate the West Plains Aquifer and the City's wells drawing on it with their activities involving AFFF.

*AFFF Use at Fairchild*

73.     Since 1970, the USAF has used PFAS-containing AFFF in fire-training exercises at Fairchild.  The USAF tested its AFFF-dispensing equipment on fire trucks by spraying AFFF on the ground.  On information and belief, the USAF disposed of PFAS-laden AFFF by washing it into its storm water system, which ultimately discharged to No Name Creek from industrial waste water ponds located in an area known as WW-1.   See Exhibit A.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

74.    Since 1970, the USAF has stored PFAS-containing AFFF at Fairchild. On information and belief, multiple storage failures resulted in AFFF spills on the ground.  On information and belief, the spills resulted in PFAS being conveyed through the industrial waste water system to the industrial waste water lagoons at WW-1 and discharged to No Name Creek.  See Ex. A

75.    On information and belief, the USAF sprayed AFFF directly into ditches on the Base.

*Fire Training Exercises at Fairchild*

76.    From 1970 until about the end of 1991, the USAF conducted fire training exercises at Fairchild in an area on the east side of the Base at the east end of Taxiway No. 10, referenced in USAF documents as FT-1.  See Ex. A

77.    FT-1 was an unlined "pit" with a sand and gravel berm. Groundwater in this location is approximately 5-6 feet below the "natural ground surface."

78.    During training exercises, the bottom of the pit at FT-1 was filled with a few inches of water. Then fuel was placed in the pit and ignited.  The fire was extinguished with PFAS-containing AFFF.

79.    The fire training exercises produced contaminated spoils that remained in the unlined pit along with a substantial volume of contaminated water.

80.    The USAF left excess liquid from the fire training on the ground and drainage areas where it would percolate into the groundwater.

81.    After about 1972, the USAF installed an oil/water separator at the FT-1 fire training area.  After installation of the oil/water separator, the USAF pumped and sent liquid still in the bottom of the pit, and not yet absorbed by the ground, to the oil/water separator.   The USAF discharged the "separated" liquid from the separator to the surface waters of No Name Creek.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

82.    The USAF also spilled PFAS-contaminated water onto the ground from the separator.

83.    An oil/water separator cannot remove water-soluble pollutants like PFAS.   As a result, the USAF discharged PFAS from the separator to No Name Creek.

84.    This discharge not only introduced PFAS into the surface water of No Name Creek but also the groundwater along the drainage course.

85.    For all periods of time of operation of FT-1, 1970 until about the end of 1991, the USAF left spoils at the bottom of the pit.  The USAF identified these spoils as an ongoing source of contamination to groundwater.

86.    Because the spoils in the pit were contaminated by PFAS, the spoils leached these substances into the groundwater.

87.    According to the USAF, training exercises occurred two to three times a month per year at FT-1 and the USAF used approximately 125 gallons of concentrated AFFF for each exercise.  AFFF is diluted to a 3% or 6% solution with water.

88.    Thus, over the period of operation of FT-1, based on the information provided by USAF, the USAF used about 78,750 gallons of AFFF. Assuming a dilution at 3%, approximately 2.6 million gallons of water contaminated with PFAS were discharged to the ground and the No Name Creek drainage from 1970 to about the end of 1991.

*Storm Water System and Industrial Waste Water Discharge at WW-1 at Fairchild*

89.    Fairchild collected storm water runoff on the central and eastern half of the Base and discharged the storm water into two industrial waste water lagoons

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

near FT-1.  In turn, the lagoons discharged into No Name Creek through three 30-inch pipes.  This area is referenced as WW-1 by the USAF in studies.  See Ex. A.

90.    FT-1 is in the eastern half of the Base.  On information and belief, USAF cleaning activities and storm events resulted in the introduction of PFAS contamination into the storm drain system, which then conveyed the PFAS into the industrial waste water lagoons at WW-1.   Id.

91.    The industrial waste water lagoons were not lined and did not prevent introduction of PFAS into the groundwater.  The lagoons discharged to No Name Creek and other surface water drainage areas without treatment to remove PFAS; as a result, the discharge contained PFAS.

92.    WW-1 thus introduced PFAS into groundwater and surface waters.

*Testing of AFFF-Dispensing Equipment at Fairchild*

93.    At Fairchild, the USAF periodically tested AFFF-dispensing equipment on and off their fire trucks.  On information and belief, the USAF discharged PFAS-containing AFFF directly onto the ground during these tests.

94.    The PFAS-containing AFFF from the foregoing tests percolated into the groundwater.

95.    The storm water system at Fairchild was connected to the industrial waste water collection and disposal system.  On information and belief, the liquid from these AFFF-equipment tests was washed into the storm water/waste water system and/or left on the ground to be transported to the storm water system. These actions were a source of PFAS in the industrial waste water/storm water discharge at WW-1.  See Ex. A.

**ACADIA LAW** PLLC
P.O. Box 15935
SEATTLE, WASHINGTON **98115**
Telephone: (207) 409-6060

*Contamination Migrates from Fairchild to the Water Supply*

96.    The USAF introduced PFAS into both groundwater and surface waters through its AFFF-disposal actions and omissions outlined in preceding paragraphs. Subsurface groundwater flow carried PFAS in the West Plains Aquifer to the City's wellfields.  PFAS-contaminated water then entered the City's water supply.

97.    Water testing in or about May 2017 documented that the water in the City's wells had been contaminated above the EPA health advisory (and other state advisories) for PFOA and PFOS.

98.    Through the acts and omissions, including those summarized in paragraphs 43-96, the USAF introduced PFAS into the groundwater of the West Plains Aquifer and contaminated it as documented by the May 2017 sampling results.

99.    At that time, the City and the USAF recommended eliminating the use of the City's water until an alternate supply of water could be provided by the City.

*Injury to Plaintiffs' Property and Damages Resulting therefrom.*

100.    Plaintiffs own and operate the Northern Quest Resort and Casino ("Northern Quest"), a luxurious resort and casino located in Airway Heights.  Over a period of years, and at the time of the contamination, the hotel was Forbes Four Star and AAA Four-Diamond rated.  Similarly, its spa was and is Forbes Four-Star acclaimed.

101.    Plaintiffs conduct a variety of other business and governmental activities on its Reservation and Trust lands in Airway Heights.

102.    Plaintiffs purchase water from the City to provide all water for these business and governmental activities.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

103.    On May 16, 2017, Plaintiffs received notice that the wellfield for the City was contaminated by PFAS in excess of the EPA health advisory for the pollutants.  The water received by Plaintiffs was their property.  The contamination resulted in injury to this property.

104.    With recommendations from the USAF to the public to switch to uncontaminated water, Plaintiffs immediately took steps to discontinue the use of the City's water at Northern Quest and other affected businesses and government facilities.  In short, Plaintiffs no longer had the beneficial use of their property as a result of the contamination.

105.    Among other actions, Plaintiffs' managers and employees took immediate steps to find alternative safe water for drinking, ice, food preparation in the restaurants, and other activities at the hotel.  Further, they undertook near heroic efforts to supply it on a short time frame. Plaintiffs provided information to all guests on exposures to PFAS in water, including information provided by the USAF and others regarding risks associated with exposure to PFAS in water that did not involve direct ingestion.

106.    There was a major disruption of the business.  Guests and employees were afraid for their health and personal safety despite Plaintiffs' efforts to allay unreasonable fears.

107.    It took many weeks before the City could provide an alternate and safe water source to Plaintiffs.  Northern Quest engaged in substantial efforts to mitigate its damages from the contamination.

108.    The contamination injured Plaintiffs property and there are well-documented losses in revenue and additional costs as a result of the immediate injury to the property from the contamination.  The contamination produced a

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

stigma effect to Northern Quest for a substantial period of time, further increasing losses.

### Violations of Mandatory Duties by the USAF

109.    Paragraphs 39-56 present USAF violations of mandatory duties.

### USAF NPDES Permit Violations at WW-1

110.    The Federal Clean Water Act, 33 U.S.C. § 1311, prohibits the discharge of pollutants from a point source into the waters of the United States without a National Pollution Discharge Elimination System ("NPDES") permit.

111.    The USAF obtained a federal permit under the Federal Clean Water Act for the discharge from the storm water/industrial waste water system at WW-1 to No Name Creek.

112.    The NPDES permit did not allow the discharge of AFFF and PFAS, which are "pollutants" under the Federal Clean Water Act, 33 U.S.C. § 1362.

113.    From 1970 to about the end of 1991, the USAF unlawfully discharged PFAS from the pipes at WW-1 through the actions and omissions described herein.

114.    The USAF therefore violated a mandatory duty when it discharged PFAS in violation of the permit.  This is per se negligence.

### USAF Violations of Mandatory Duties under State Law

115.    The Federal Clean Water Act, 33 U.S.C. § 1323, waives the federal government's sovereign immunity for all state and local requirements pertaining to water and makes such requirements applicable to the USAF.   33 U.S.C. § 1323 was and is applicable to the USAF at all times relevant to this Claim.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

116.     The Washington State Clean Water Act, RCW 90.48.080, makes it unlawful to drain or discharge "pollutants" into the groundwater without a permit. AFFF and PFAS are both "pollutants" under state law, RCW 90.48.020.

117.     The USAF never obtained a state permit to introduce AFFF and PFAS into the groundwater.

118.     From 1970 to about the end of 1991, the USAF introduced PFAS-containing AFFF into the groundwater through the actions and omissions described in Paragraphs 42-98.  These actions and omissions include, but are not limited to, introduction of PFAS into groundwater from WW-1's unlined lagoons, FT-1, fire truck testing, and drainage away from WW-1, FT-1, and the truck testing areas.

119.     USAF caused PFAS contamination polluted public and private water supplies in violation of RCW § 70.54.010.

120.     Through intentional acts, the USAF contaminated the groundwater and created a public nuisance in violation of RCW § 7.48.140.

121.     Thus, the USAF violated mandatory duties imposed by state law and made applicable to the USAF under 33 U.S.C. § 1323.

122.     The USAF actions violating mandatory duties imposed by state law were intentional.  The foregoing violations constitute per se negligence.

*USAF Violations of Trust Responsibility*

123.     TRIBE is federally recognized.

124.     The USAF holds a mandatory trust responsibility to TRIBE.

125.     When the USAF took actions to introduce PFAS into the groundwater of the West Plains Aquifer and contaminated the City's wellfield, it damaged TRIBE's interests and damaged its business and public health interests.

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **23** of **37**

126.    As a result, the USAF violated its mandatory duty to TRIBE to act in TRIBE's best interest and avoid damage to it including the property it held.

*USAF Violations of Executive Orders, Directives, and Manuals*

127.    Throughout the relevant period USAF actions were in violation of mandatory duties imposed by Executive Orders, Manuals, and Polices.

128.    The USAF failed to respond to FIOA requests within a time frame for filing of this suit and in the absence of discovery, as a result, the allegations in paragraph 55 are incomplete.  Discovery will be conducted with the filing of this suit and is likely to grow in length and in specificity.

## VII.    CLAIMS

### FIRST CAUSE OF ACTION

### AGAINST THE MANUFACTURING DEFENDANTS NEGLIGENCE

129.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

130.    This cause of action is brought pursuant to Washington State statutory and common law, to include but not limited to Chapter 4.22 RCW.

131.    MANUFACTURING DEFENDANTS knew or should have known that exposure to PFAS (including PFOA and PFOS) was hazardous to the environment and to human health.

132.    MANUFACTURING DEFENDANTS knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS was hazardous to human health and caused serious health effects including cancer.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

133.     MANUFACTURING DEFENDANTS knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and likely to contaminate water supplies if released into the environment.

134.     MANUFACTURING DEFENDANTS knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF to the United States military facilities, including Fairchild would cause contamination and harm to the environment, particularly municipal well drinking supplies in areas proximal to federal facilities.

135.     MANUFACTURING DEFENDANTS should have known that in the case of Fairchild this would result in the contamination of the aquifer and the City's wellfield drawing from it.  Further, it would contaminate the water of purchasers/users of the City's water supply, such as occurred in the case of the Plaintiffs.

136.     MANUFACTURING DEFENDANTS owed a duty to Plaintiffs to act reasonably and not place inherently dangerous AFFF into the marketplace when its release into the aquifers and drinking water supplies from it was imminent and certain.

137.     MANUFACTURING DEFENDANTS marketed and sold their products with knowledge that AFFF containing large quantities of toxic PFAS would be stored in fire suppressant systems and tanks on USAF bases, and that such systems and storage tanks were used and maintained in such a manner that dangerous chemicals would be released into the environment.

138.     Knowing of the dangerous and hazardous properties of AFFF, the manner in which AFFF was used, stored, and maintained at Fairchild, it was foreseeable to the MANUFACTURING DEFENDANTS that AFFF would

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

1  contaminate the surrounding environment, groundwater, aquifers, and drinking

2  water well fields and supplies of the City due to its proximity to Fairchild.

3     139.    The magnitude of the burden on the MANUFACTURING

4  DEFENDANTS to guard against this foreseeable harm to Plaintiffs was minimal as

5  the practical consequences of placing this burden on the MANUFACTURING

6  DEFENDANTS was minimal.  Such burdens could have included merely

7  providing adequate instructions, proper labeling, and sufficient warnings about

8  their AFFF products.

9     140.    As manufacturers, MANUFACTURING DEFENDANTS were in the

10 best position to provide adequate instructions, proper labeling, and sufficient

11 warnings about their AFFF products for the protection of health and the

12 environment.

13    141.    Considering the above factors related to risk, foreseeability, social

14 utility, burden of guarding against the harm, and the practical consequences of

15 placing that burden on the MANUFACTURING DEFENDANTS, the

16 MANUFACTURING DEFENDANTS therefore owed a cognizable duty to

17 Plaintiffs not to contaminate the aquifer(s) near Fairchild, the well supply at

18 Airway Heights, and the environment and groundwater in and around Fairchild

19 with AFFF containing dangerous levels of PFAS.  They owed the duty to all users

20 of the aquifer and purchasers/users of the City's water including Plaintiffs.

21

22              **SECOND CAUSE OF ACTION**

23

24   **AGAINST THE MANUFACTURING DEFENDANTS FOR FAILURE**
                              **TO WARN**

25    142.    Plaintiffs hereby repeat, reallege, and reiterate each and every

26 allegation in the preceding paragraphs as if fully restated herein.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

143.    This cause of action is brought pursuant to Washington State statutory law to include but not limited to Chapter 7.72 RCW.

144.    MANUFACTURING DEFENDANTS knew or should have known that exposure to PFAS, including PFOA and PFOS, was hazardous to the environment and to human health.

145.    MANUFACTURING DEFENDANTS knew or should have known that the manner in which they were manufacturing, marketing, and selling PFAS-containing AFFF was hazardous to human health and the environment.

146.    MANUFACTURING DEFENDANTS knew or should have known that the manner in which they were manufacturing, marketing, and selling PFAS-containing AFFF would result in the contamination of the aquifers and municipal and private water supply as a result of the proximity to Fairchild.

147.    Defendants had the duty to warn of the hazards associated with AFFF. Considering the above factors related to risk, foreseeability, social utility, burden of guarding against the harm, and the practical consequences of placing that burden on the MANUFACTURING DEFENDANTS, the MANUFACTURING DEFENDANTS therefore owed a cognizable duty to Plaintiffs not to contaminate the well supply at Airway Heights and the environment and groundwater in and around Fairchild with AFFF containing dangerous levels of PFAS. They also owed the same duty to the purchasers/users of the City's water supply including the Plaintiffs.

148.    MANUFACTURING DEFENDANTS' willful, wanton, malicious, and/or reckless conduct includes but is not limited to MANUFACTURING DEFENDANTS' failure to take reasonable measures to ensure PFAS, including PFOA and PFOS, which they knew to be carcinogenic, did not contaminate the

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

water supply, did not damage Plaintiffs' property, and was not ingested by Plaintiffs' users.

149.    MANUFACTURING DEFENDANTS have caused great harm to the property and water supplies of Plaintiffs and demonstrated an outrageous conscious disregard for their safety and property with implied malice, warranting the imposition of punitive damages.

150.    MANUFACTURING DEFENDANTS failed to provide sufficient warning that the use and storage of MANUFACTURING DEFENDANTS' product would cause the product to be released into the environment and cause the contamination of the environment, groundwater, and drinking water, with PFAS including PFOA and PFOS.

151.    Adequate instructions and warnings on the AFFF products could have reduced or avoided the foreseeable risks of harm to Plaintiffs' property, which includes the water, and the users of their property.

152.    Had MANUFACTURING DEFENDANTS provided adequate warnings, Plaintiffs could have taken measures to prevent the injury or lessen it including through filtration or shifts to alternative supplies of water from sources other than the aquifer which would be contaminated through the use of the PFAS-contaminated AFFF.

153.    Had MANUFACTURING DEFENDANTS provided adequate warnings to the end users, steps could have been taken to reduce or prevent the release of PFAS, including PFOA and PFOS, into the environment, groundwater, and drinking water.

154.    MANUFACTURING DEFENDANTS' failure to warn was a direct and proximate cause of the environmental and health impacts from PFAS, including PFOA and PFOS, that came from the use, storage, and disposal of AFFF

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

1  at Fairchild and in turn the injury to Plaintiffs' property including the water being

2  used by them.

3      155.    As such, MANUFACTURING DEFENDANTS' failure to provide

4  adequate and sufficient warnings for the AFFF that they manufactured, marketed,

5  and sold renders the AFFF a defective product.

6      156.    As a result of MANUFACTURING DEFENDANTS' manufacture,

7  sale, or distribution of a defective product, MANUFACTURING DEFENDANTS

8  are strictly liable in damages to the Plaintiffs.

9      157.    MANUFACTURING DEFENDANTS' acts were willful, wanton,

10  reckless, and/or conducted with a reckless indifference to the rights of Plaintiffs.

11                          **THIRD CAUSE OF ACTION**

12                 **AGAINST THE MANUFACTURING DEFENDANTS FOR**
13                    **MANUFACTING DEFECT/DEFECTIVE DESIGN**

14      158.    Plaintiffs hereby repeat, reallege, and reiterate each and every

15  allegation in the preceding paragraphs as if fully restated herein.

16      159.    This cause of action is brought pursuant to Washington State statutory

17  and common law, to include but not limited to Chapter 7.72 RCW.

18      160.    MANUFACTURING DEFENDANTS knew or should have known

19  that exposure to PFAS, including PFOA and/or PFOS, was hazardous to the

20  environment and to human health

21      161.    MANUFACTURING DEFENDANTS knew or should have known

22  that the manner in which they were manufacturing, marketing, and selling AFFF,

23  containing PFAS, including PFOA and/or PFOS, was hazardous to human health

24  and the environment.

25      162.    MANUFACTURING DEFENDANTS knew or should have known

26  that the manner in which they were manufacturing, marketing, and selling AFFF

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **29** of **37**

**ACADIA LAW** PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

containing PFAS, including PFOA and/or PFOS, would result in the contamination of the municipal and private water supplies at United States facilities due to their proximity to such facilities where AFFF was being used.  They knew or should have known that AFFF at Fairchild would contaminate the aquifer(s) at Fairchild and the drinking water wells and well-fields drawing from the aquifer(s).

163.    Knowing of the dangerous and hazardous properties of the AFFF, MANUFACTURING DEFENDANTS could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFAS, including PFOA or PFOS.

164.    These alternative designs and/or formulations were already available, practical, and technologically feasible.

165.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to property caused by the MANUFACTURING DEFENDANTS' manufacture, marketing, and sale of AFFF that contained PFAS, including PFOA or PFOS.

166.    Additionally, the AFFF that was manufactured, marketed, and sold by the MANUFACTURING DEFENDANTS contained PFAS, including PFOA and/or PFOS, chemicals that were so toxic and dangerous to human health and the environment, mobile, and persistent, that the act of designing, formulating, manufacturing, marketing, and selling this product was unreasonably dangerous under the circumstances.

167.    The AFFF manufactured, marketed, and sold by the MANUFACTURING DEFENDANTS was defectively designed as the foreseeable risk of harm could have been reduced or eliminated by the adoption of a reasonable, alternative design that was not unreasonably dangerous.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

168.    MANUFACTURING DEFENDANTS' defective design and formulation of AFFF was a direct and proximate cause of the environmental and health impacts from PFAS, including PFOA and PFOS, that came from the use and storage of AFFF at Fairchild.

169.    The AFFF did not conform to implied warranties required by law.

170.    As a direct result of the contamination Plaintiffs have lost use and enjoyment of their property and have suffered damages, discomfort, inconvenience and annoyance as a consequence of the contamination of their property by MANUFACTURING DEFENDANTS.

171.    As a result of MANUFACTURING DEFENDANTS' design and formulation of a defective product, MANUFACTURING DEFENDANTS are strictly liable in damages to Plaintiffs.

172.    MANUFACTURING DEFENDANTS' acts were willful, wanton, reckless, and/or conducted with a reckless indifference to the rights of Plaintiffs.


**FOURTH CAUSE OF ACTION**

**AGAINST THE MANUFACTURING DEFENDANTS FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

173.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

174.    At the time MANUFACTURING DEFENDANTS marketed, sold, and distributed PFAS-containing AFFF, MANUFACTURING DEFENDANTS knew of the intended use by the UNITED STATES and the USAF and impliedly warranted AFFF was safely fit for fire suppression and fire training exercises and was of merchantable quality, effective, and safe for such use.

**ACADIA LAW** PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

175.    MANUFACTURING DEFENDANTS knew, or had reason to know, that Plaintiffs would rely on MANUFACTURING DEFENDANTS' judgment and skill in providing the AFFF for its intended use.

176.    The UNITED STATES reasonably relied upon the skill and judgment of MANUFACTURING DEFENDANTS that the AFFF was of merchantable quality, safe, and effective for its intended use.

177.    Contrary to such implied warranties, the AFFF manufactured, sold and distributed by the MANUFACTURING DEFENDANTS was not of merchantable quality, safe, or effective for its intended use because the AFFF was unreasonably dangerous, defective, unfit, and ineffective for the ordinary purposes for which the AFFF was used at Fairchild.

178.    As a direct and proximate result of MANUFACTURING DEFENDANTS' breach of implied warranties, the use proximately caused injury to Plaintiffs' property and caused serious injury to Plaintiffs' property and damages.

179.    As a direct and proximate result of MANUFACTURING DEFENDANTS' breach of implied warranties, the use proximately caused injury to Plaintiffs' property and other damages to them.  As such, they are strictly liable to Plaintiffs.

**MANURACTURING DEFENDANTS: MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, ENTERPRISE LIABILITY**

180.    MANUFACTURING DEFENDANTS are manufacturers that control a substantial share of the market for PFAS-containing AFFF in the United States and are jointly responsible for the contamination of the groundwater near Fairchild and for causing the damages and injuries complained of in this action. Market share liability attaches to the MANUFACTURING

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

1    DEFENDANTS and the liability of each should be assigned according to its

2    percentage of the market for PFAS-containing AFFF at issue in this Complaint. It

3    is impossible to identify the exact MANUFACTURING DEFENDANT that

4    manufactured any given batch of AFFF; and there has been comingling of batches

5    in the environment; therefore, the harm is indivisible and the harm, contribution of

6    each MANUFACTURING DEFENDANT is indistinguishable, and the product

7    giving rise to the harm is fungible.

8        181.    Concert of action liability attaches to all MANUFACTURING

9    DEFENDANTS, each of which participated in a common plan to commit the torts

10   alleged herein and each of which acted tortuously in pursuance of the common

11   plan to knowingly manufacture and sell inherently dangerous AFFF-containing

12   PFAS, including PFOA and/or PFOS.

13       182.    Enterprise liability attaches to all of the MANUFACTURING

14   DEFENDANTS for casting defective products into the stream of commerce.

15                  **ASSERTION OF PUNITIVE DAMAGES AGAINST THE**
16                        **MANUFACTURING DEFENDANTS**

17       183.    Plaintiffs hereby repeat, reallege, and reiterate each and every

18   allegation in the preceding as if fully restated herein.

19       184.    Upon information and belief, MANUFACTURING DEFENDANTS

20   engaged in willful, wanton, malicious, and or/reckless conduct that caused the

21   foregoing property damage and nuisances upon the properties of Plaintiffs

22   disregarding their protected rights.

23       185.    MANUFACTURING DEFENDANT have caused great harm to the

24   property and water supplies of Plaintiffs and demonstrated an outrageous

25   conscious disregard for their safety with implied malice, warranting the imposition

26   of punitive damages.

**ACADIA LAW** PLLC
P.O. Box 15935
**SEATTLE, WASHINGTON 98115**
Telephone: (207) 409-6060

## FIFTH CAUSE OF ACTION

## AGAINST THE UNITED STATES FOR TRESPASS

186.    Plaintiff, TRIBE, hereby repeats, realleges, and reiterates each and every allegation in the preceding as if fully restated herein.

187.    The USAF used and disposed of PFAS-containing AFFF.

188.    These actions violated mandatory duties imposed on the USAF by federal and state law and therefore constituted per se negligence.

189.    The USAF could reasonably foresee that PFAS would contaminate the West Plains Aquifer and contaminate the City's wellfield. The USAF also could reasonably foresee that PFAS would be conveyed to the water supply system and property of the City's water users, including the Plaintiffs.

190.    The USAF's PFAS contamination entered the property of the Plaintiffs, including the pipes and parts of the water system owned by the Plaintiffs, and the Plaintiffs' water within this system.

191.    Upon advice of the USAF and the City, TRIBE shut down the use of the water received from the City, as a result of the trespass.

192.    The USAF's trespass by PFAS caused damages to TRIBE in the amount of $21,270,000 and TRIBE seeks this amount against the UNITED STATES.

## SIXTH CAUSE OF ACTION

## AGAINST THE UNITED STATES FOR NEGLIGENCE

193.    PLAINTIFF, TRIBE, hereby repeats, realleges, and reiterates each and every allegation in the preceding as if fully restated herein.

CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL - Page **34** of **37**

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

194.    The USAF owed a duty of care to the public and to TRIBE to comply with the laws protecting water to ensure that no health hazards or pollution of drinking water supplies were created.

195.    The body of federal and state water law creates a standard of care and the UNITED STATES' violations of these laws constitute per se negligence.

196.    The USAF was negligent in its actions and omissions including its violation of the NPDES permit for WW-1 and its failure to obtain Washington State permits for its various modes of PFAS introduction into groundwater.

197.    It was foreseeable by the USAF that its negligent actions, which involved breaches of mandatory duties imposed by federal and state law, would contaminate drinking water supplies.

198.    As a result of its negligence, the USAF proximately caused the contamination (injury) of the wellfield and TRIBE's property and water supply.

199.    Plaintiff, TRIBE, suffered damages in the amount of $21,270,000 and seeks the amount against the UNITED STATES.

## SEVENTH CAUSE OF ACTION

## AGAINST THE UNITED STATES FOR NUISANCE

200.    PLAINTIFF, TRIBE, hereby repeats, realleges, and reiterate each and every allegation in the preceding as if fully restated herein.

201.    The USAF intentionally conducted actions with respect to the use and disposal of PFAS-containing AFFF.  The USAF knew that the ground and groundwater of the West Plains Aquifer at Fairchild would offer a disposal mechanism for its pollutants.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

202.    The USAF violated mandatory duties imposed on it by federal and state law when it engaged in unpermitted use and disposal of PFAS. This constitutes per se negligence and a breach of the USAF's duties to TRIBE.

203.    The USAF could reasonably foresee that PFAS would contaminate the West Plains Aquifer and contaminate the City's wellfield. It also could reasonably foresee that PFAS would be conveyed to the pipes and property of the City's water users, including TRIBE.

204.    The USAF contaminated the property of the Plaintiff, the pipes and parts of the water system that it owns, with PFAS contamination in excess of health advisories.

205.    Upon advice of the USAF and the City, TRIBE shut down the use of the water that received from the City as a result of the trespass.

206.    The USAF contaminated public water supplies in violation of RCW § 7.48.140.

207.    The USAF substantially and unreasonably interfered with the use of Plaintiff's property, including its water supply. This interference constituted a nuisance.

208.    The USAF caused damages to TRIBE in the amount of $21,270,000 against the United States. The TRIBE seeks damages in this amount against the United States.

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

## VIII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

A.  An award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages from the MANUFACTURING DEFENDANTS; in an amount of at least 21,270,00.00 with punitive damages to be added to this amount;

B.  An award to TRIBE from the UNITED STATES, in the amount of $21,270,000 and attorneys' fees and costs allowed by statute,

C.  An order for an award of attorney fees and costs, as provided by law;

D.  Pre-judgment and post-judgment interest as provided by law; and

E.  An order for all such other relief the Court deems just and proper.

Dated this 30th Day of March, 2020

/s/ Valerie Lee
_____

ACADIA LAW PLLC
Valerie Ann Lee, WSBA No. 23548
P.O. Box 15935
Seattle, WA 98115
207-409-6060

ACADIA LAW PLLC
P.O. Box 15935
SEATTLE, WASHINGTON 98115
Telephone: (207) 409-6060

# EXHIBIT A TO COMPLAINT PG 1 of 5

**LEGEND**

- MUNICIPAL BOUNDARY
- USAF PROPERTY BOUNDARY
- HIGHWAY

**ZONING[a]**

- RESIDENTIAL
- COMMERCIAL
- LIGHT INDUSTRIAL
- HEAVY INDUSTRIAL
- RECREATIONAL, OPEN SPACE, PUBLIC
- TRIBAL LANDS
- MINING

ALL OTHER AREAS OUTSIDE USAF PROPERTY BOUNDARIES AND OUTSIDE MUNICIPAL BOUNDARIES LIE WITHIN UNINCORPORATED SPOKANE COUNTY AND ARE ZONED RURAL TRADITIONAL

[a]CITY OF AIRWAY HEIGHTS ZONING DATA PROVIDED BY CITY OF AIRWAY HEIGHTS PLANNING DEPARTMENT.

CITY OF SPOKANE ZONING DATA DOWNLOADED FROM http://www.spokanecity.org/services/gis/data/.

ZONING DATA PRESENTED FOR UNICORPORATED AREAS OF SPOKANE COUNTY WAS DIGITIZED FROM THE SPOKANE COUNTY BUILDING AND PLANNING MAP DOWNLOADED FROM http://www.spokanecounty.org/bp/content.aspx?c=2299.

0 2,500 5,000 Feet

N

90

**FIGURE 1-2**
**FAIRCHILD AFB VICINITY AND ZONING**

FAIRCHILD AIR FORCE BASE, WASHINGTON

CH2MHILL

O:\AFCEE\COMMONFILES\FAIRCHILDAFB\MAPFILES\BY.FC.BJ.01\FIG01_03_ZONING.MXD 6/13/2013 8:38:04 AM FELHADID



WW-Waste Water Sites
SW-Solid Waste Sites
FT-Fire Training Sites
IS-Industrial Spill Sites
PS-POL Spill Sites
OB-Off-Base Sites



**EXHIBIT A TO COMPLAINT
PG 2 of 5**

Figure 2-1.  Index and Site Map of Fairchild AFB and Mica Peak Radar Station (OB-1), Washington.



Denver Operations



Figure 3-6.    Historic Map of Sites FT-1 and WW-1, July 1972

**EXHIBIT A TO COMPLAINT   PG  4 of 5**



Figure 4.6

INDUSTRIAL WASTE LAGOONS
FAIRCHILD AIR FORCE BASE, WASHINGTON



EXHIBIT A TO COMPLAINT PG 5 of 5

*\\roswell\Arcinfo\Av_Proj\AFCEC\Fairchild\GIS\MapFiles\Final_revised\Figure_2.1.mxd*
*9/2/2015 AR*
*Source: Wetland, National Wetlands Inventory - Wetland Polygons, Published September 2012, U.S. Fish and Wildlife Service, Division of Habitat and Resource Conservation, Washington, D.C. http://www.fws.gov/wetlands/*

CH2MHILL.

**Legend**

- Stormwater Drainage Line
- Sanitary Wastewater Line
- Road
- Approximate Location Boundary
- Base Boundary
- Building
- Approximate Uppermost, Shallow Groundwater Flow Direction

Wetland

- Freshwater Emergent Wetland
- Freshwater Pond

**Figure 2.1**
**Locations of Fire Training Areas, Eastern Part of Fairchild AFB, Washington**